# IDA B. ROTH

*vs.*

# LOUIS J. ROTH.

*Divorce—Presumption on Appeal—Costs—Liability of
Husband.*

In the absence of any testimony in the record, the Court of
Appeals cannot review the action of the lower court in dismiss-
ing the bill of complaint.                                    p. 147

In a divorce proceeding by the wife, she is not under all
circumstances entitled to alimony *pendente lite,* and suit money
and counsel fees.                                    pp. 147, 148

In the absence of any testimony in the record, it must be
assumed on appeal that the lower court, which heard the wit-
nesses and was familiar with the proceedings, allowed as great
a fee to the solicitor of plaintiff wife as was proper under the
circumstances.                                    p. 148

The practice of solicitors, in divorce proceedings, of reduc-
ing the size of the record, with the sanction of the lower court,
is peculiarly appropriate when, although the decree below is
in favor of the husband, application is made to require him to
pay for the transcript and to pay counsel fees.                p. 149

In the absence of any appeal from an order refusing to
require the defendant husband to furnish means to pay for a
transcript of the testimony, the appellate court cannot pass on
the propriety of such refusal.                                p. 149

In the absence of any evidence in the record, appellant could
not complain of the action of the lower court in awarding her,
under authority of Code, art. 16, sec. 38, as amended by Acts
1920, ch. 574, the guardianship and custody of infant children
and charging the appellee husband with their support and
maintenance, even conceding that the appellate court could
properly review the discretion of the lower court in such a
matter.                                    p. 150

The appeal by appellant wife, on the record as presented, being without justification, *held* that the costs should not be imposed on appellee husband.       p. 150

*Decided March 16th, 1923.*

Appeal from the Circuit Court of Baltimore City (STUMP, J.).

Bill by Ida Roth against Louis J. Roth. From a decree dismissing the bill of complaint, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*David Ash*, for the appellant.

*John L. Sanford*, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The bill in this case was filed on the 8th of January, 1920, by the present appellant, by which she sought to obtain a divorce *a mensa et thoro* from the defendant (appellee), asked for the guardianship and custody of their five minor children, for alimony, alimony *pendente lite,* and counsel fees. An injunction was also prayed for to prohibit the defendant from disposing of or encumbering his property and from taking any of the children out of the jurisdiction of the court.

The bill alleges that the defendant for many years past had treated the plaintiff "with great cruelty, harshness and brutality, has threatened to strike and beat her, has insulted and vilified her, and, for some time past, his conduct became so intolerable that your oratrix left his bed." On the 23rd of March, 1920, a plea was filed in which the defendant plead that on the 23rd of October, 1919, the plaintiff filed a bill of complaint in that court against the defendant "for the same matters and to the same effect and for like relief and purpose," to which the defendant answered, and other proceedings were thereupon had; "and the said former bill and proceedings now remain pending in that court and the said cause is yet undetermined and undismissed." The record does

not show what disposition was made of the plea, but on the 13th of April, 1920, the defendant answered the bill at length, in which he denied under oath the allegations of the bill and set out in great detail what he alleged to be the facts. He not only denied the charge of cruelty, etc., made in the bill, but charged that she "for years past has refused to speak to him, neglected and refused to perform her duties towards him appertaining to a dutiful wife, which continued for long periods of time, that would average in recent years one-half or more of the time; that she has treated him with great cruelty, excessive vicious conduct, upbraided him in violent, abusive language, falsely accusing him with committing the crime of adultery and of having and maintaining illegitimate children; that she has repeatedly made remarks to him in the presence of their children impugning the legitimacy of his sister, vilified, abused and slandered his parents." The answer also states occasions when it is alleged she threatened to shoot him, to stab him with a carving fork, to scald him with a tea kettle of hot water; and on October 21st, 1919, two days before she filed a previous bill, which the defendant alleges was dismissed by the court, "at about 2 o'clock in the morning she threatened to take something and beat his brains out while he was lying in bed trying to take care of their youngest child about seven years of age, she having gone out and remained out somewhere unknown to the defendant until about between 1.30 and 2 o'clock A. M." The answer alleges many other things which, if true, have been seldom equaled by anything which appears in the records of this court. That answer was signed by a former responsible and prominent member of the bar of this Court—Mr. S. S. Field, now deceased.

The bill does not disclose that the plaintiff and their infant children were still living in the house of the defendant, 3009 Garrison Avenue, in the City of Baltimore, although it does allege simply that the plaintiff "left his bed" but the answer states that:

"The defendant says that the plaintiff is not with-
out means of support, because she is living in the de-
fendant's house, No. 3009 Garrison Boulevard, Forest
Park; that the defendant and the plaintiff and their
minor children have been living in that house since
January, 1910; that the defendant has paid all the
expenses of the house, including the expenses of the
table and clothing of the plaintiff and their children,
including college fees, music lessons and business col-
lege fees; that he has provided the support for his
wife and their six children until their oldest son be-
came of age four years ago; and that the other five
children are still minors, ranging in age from seven to
nineteen years, and are still being educated, supported
and maintained and provided with a home, comfort
and needs; indeed, with many luxuries beyond his
ability and station in life.  That the plaintiff was liv-
ing in the house of the defendant, and being amply
provided for by the defendant at the time of the filing
of the bill, and is still living there and is being pro-
vided with the home and the money necessary for the
table and support in every way by the defendant as
heretofore."

The answer further states that their second son, who was
in his twentieth year when the answer was filed, which would
make him of age now, earned at least $1,500 a year, of which
the defendant received no part, although he was supporting
and maintaining him, and denies that he is the owner of other
valuable property and large sums of money as alleged in the
bill, and states "that practically all of his means have been
expended in supporting and maintaining his wife and their
large family of children."  The defendant also filed an
answer to an order to show cause why he should not be re-
quired to pay alimony *pendente lite* which, if true, would be a
strong reason for the court to hesitate to require the de-
fendant to pay it.  There was an order, however, passed on
the 13th of May, 1920, requiring the defendant to pay the
plaintiff twenty dollars per week as alimony *pendente lite*.

The defendant took an appeal from that, but just what became of the appeal is not shown.

Orders or decrees were passed at different times by five judges, but, on the 5th of September, 1922, JUDGE STUMP passed a decree in which it was recited that "the above entitled cause having come on for hearing upon bill, answer and testimony taken in open court, and having been heard and submitted," it was decreed that the bill of complaint be dismissed; "that the plaintiff shall have the guardianship and custody of the infant children, John Conrad Roth and Walter Louis Roth, for the term of one year from this date, the court to retain jurisdiction over said infant children for said term and it is also further ordered that the defendant shall be charged with the support and maintenance of said infant children, the defendant to pay the court costs of these proceedings and the sum of $500 to Ida B. Roth as and for counsel fees. The court reserving for future determination questions of requiring the husband to re-imburse the wife for any moneys expended necessarily or properly in connection with this cause."

This appeal was taken on the 18th of October, 1922, "from the order, adjudgment and decree of the 5th day of September, 1922, dismissing complainant's bill of complaint, and allowing only a five hundred dollars counsel fee to the solicitor of the plaintiff, and each and every part of said order, adjudgment and decree."

The next day plaintiff filed a petition to have the testimony in said cause written up and filed among the proceedings, and filed a letter from the stenographer in which he estimated the costs and carbon copy of the transcript of testimony to be $690. An order was passed by JUDGE BOND requiring the defendant to show cause why he should not pay for the defendant's solicitor "the certain sum hereinbefore claimed for expenditures in the preparation for trial of said cause," and the defendant answered. Then on the 18th of October, 1922, another petition was filed praying for an order against the defendant for contempt in not paying the costs ordered to be

paid, requiring the defendant to appear in person on the 30th
of October to show cause, etc. A long answer was filed to
that. On November 14th an opinion was filed by Judge
Bond and, on the 22nd of November, 1922, an order was
passed by him ordering the defendant to pay the $500 counsel
fee in payments as therein set out, ordering him to pay the
accrued costs without further delay, and directing that de-
fendant should not at that time be required to pay for the
cost of making up the stenographic transcript, the record
for the Court of Appeals, the cost of printing the briefs, nor
any additional fees—the court declining at that time to pass
upon the matters of the last named costs and expenses and
other and further relief prayed. There then follow in the
record a statement made by Judge Stump on December 23,
1922, and a certificate of the clerk of an order passed by the
Supreme Bench of Baltimore assigning the judges to the
different courts. The last two have no relevancy to this
appeal, and as the appeal was taken from a decree of the
court passed on the 5th of September, 1922, it is difficult to
understand why any of the proceedings referred to above
which took place after that decree (except of course the order
for the appeal) were inserted in the record.

There is no testimony whatever in the record, and it is
impossible for this court to review the part of the decree dis-
missing the bill of complaint. As was said by Judge Offutt
in *Carter* v. *Carter,* 139 Md. 265: "The learned court below
had jurisdiction of the subject matter and of the persons in
the cause, and its action in regard to it will, in the absence of
anything in the record to the contrary, be assumed in this
court to be correct." Apparently the appellant proceeded on
the theory that, in a divorce proceeding by the wife, she is
under all circumstances entitled to alimony *pendente lite* and
suit money and counsel fees. We do not so understand the
law in this State. It was early said in *Coles* v. *Coles* 2 Md.
Ch. 346, that "the rule is believed to be almost universal, to
allow a destitute wife, who has been abandoned, or is living
apart from her husband, temporary alimony, and the means

of prosecuting or defending a suit for divorce, and this without any inquiry whatever, into the merits," or, as said in *Daiger* v. *Daiger, Ibid.,* 335: "It is believed that no case can be found, in which the wife, living separate from her husband, and without an income competent to her support, and the maintenance of the suit, has been denied temporary alimony, and an allowance to enable her to defend herself, or prosecute her suit against her husband." There are many cases in this State where the same general rule is repeated, but some of them have emphasized the necessity in such cases of the wife being unable to support herself, or provide suit money and counsel fees out of her own means. *Hood* v. *Hood,* 138 Md. 355, is one of the late cases holding that, if the wife has ample means for her support and maintenance and to enable her to prosecute or defend her suit, she will not be allowed alimony *pendente lite,* although, as was said, sometimes there may be reasons for allowing her counsel fees and money for other expenses when the court would not grant alimony *pendente lite,* but it is only when she has been abandoned, or is living separate from her husband for sufficient reasons, that that is necessarily done. If the facts alleged in the defendant's answer were proven to the satisfaction of the court, it is manifest that she is not entitled to alimony *pendente lite,* and it might be added that, if they were so proven, the court could well refuse to require the defendant to pay such a bill as is asked for a transcript of the testimony. Her solicitor seems to be laboring under the impression that he is entitled to a much larger fee than the sum of $500, which was allowed by the court. As we have seen, there is no testimony in the record, and hence this Court must assume that the lower court, which heard the witnesses and was familiar with the proceedings, allowed as much as was proper under the circumstances. The appellant did file two certificates of reliable and prominent attorneys—in one of which two attorneys certified that $2,500, and in the other three attorneys certified that $3,000 would be a reasonable fee for the solicitor for the plaintiff, but, as we have already

indicated, there is nothing in the record which would justify this court in disturbing the order of the lower court, which allowed quite as much as would be justified by precedents in cases of this kind.

The tendency of late years has been to bring very large records to this Court in divorce cases. Perhaps we would be safe in saying that not over a third of many of them are at all necessary in order to enable this Court to properly review the decisions of the lower courts. We have recently approved the practice of solicitors materially reducing the size of the record to be transmitted to this Court, if sanctioned by the lower court. Such practice is peculiarly appropriate in such a case as this, where, although the decree below is in favor of the husband, application is made to require him to pay for the transcript, counsel fees, etc.

We would not adopt any general rule which would deprive wives of having the decisions of the lower courts reviewed, but they must be reasonable in their demands and especially in demands made by their solicitors which are for their benefit, and there may be cases where the evidence discloses such facts as justify the lower court in refusing to require husbands to pay such expenses.

In this case there is nothing before us to authorize us to pass on the question whether the lower court should have compelled the appellee to furnish the necessary means to pay for a transcript of the testimony taken. The refusal of the court to order the defendant "at this time" to pay for the cost of making up the transcript, etc., was passed on November 22, 1922, and there is no appeal in the record from that order. In *Rohrback* v. *Rohrback,* 75 Md. 317, the appeal was from an order of the lower court dismissing the petition of the wife, filed after her husband had taken an appeal from a decree dismissing his bill for divorce *a vinculo,* in which she alleged she was entirely destitute of means to employ counsel and to pay the costs incident to the appeal. This Court reversed that order. In *Buckner* v. *Buckner,* 118 Md. 263, there was an appeal by the husband from an order requiring

him to pay a counsel fee in connection with the appeal on the merits, and a sum for printing her brief. The lower court had passed a decree dismissing the husband's bill, and allowing permanent alimony, and an additional counsel fee to the wife on a cross-bill filed by her. This Court, on appeal from that decree, reversed it, and held that the husband was entitled to a divorce *a mensa,* that the wife was living apart from her husband without sufficient cause and, therefore, was not entitled to alimony, 118 Md. 101, but in the appeal in 118 Md. 263, we affirmed the lower court in passing the order appealed from in reference to counsel fees and printing the brief for the wife. In *Dicus* v. *Dicus,* 131 Md. 87, we approved of those cases, but we held that the application should be made to the trial court and, as shown by those cases, the practice is for the party claiming to be aggrieved to bring the question before us by an appeal from the order passed by the lower court.

The appellant could not complain of the action taken in the decree of September 5th, 1922, in awarding her the guardianship and custody of the two infant children and charging the appellee with their support and maintenance. No reference was made in the opinion to the other three, but if their ages were correctly stated in the defendant's answer, Edward P. Roth at the date of the decree had reached his majority, and the two daughters were over eighteen years of age. That part of the decree relied on section 38 of article 16 of the Code, as amended by the Acts of 1920, ch. 574, and we are again met with the difficulty that we have no evidence before us, even if we could properly review the exercise of the discretion of the lower court in such a matter.

Inasmuch as there is nothing in the record to justify us in reversing any part of the decree, it will be unnecessary to discuss the motion to dismiss the appeal, and we will affirm the decree. As there was no possible justification in bringing such a record as this to this Court, we will not impose the costs of this appeal on the appellee.

*Decree affirmed, the appellant to pay the costs.*