## WALLINGSFORD *vs.* WALLINGSFORD.

APPEAL from *Prince George's* county court, sitting as a court of equity. On the 15th of April 1821, a petition was filed by the appellee, who is the wife of the appellant, stating, that her husband had turned her out of his house, and refused to permit her to live with him, or to make any reasonable provision for her support, and that she was left destitute, and that he was a man of considerable property, the greater part of which he obtained by his marriage with her. It also stated, that he had, some time before, by fear, threats, and fraudulent misrepresentations, prevailed on her to execute some writing, and which was not done fairly or legally so as to be binding on her. Prayer for a *subpœna*, that the defendant might be compelled to answer and to produce said writing, and state under what circumstances and in whose presence it was executed, and also the amount of his property, real and personal, so that a proper and reasonable allowance for her support might be decreed her, and for such further and other relief in the premises as she might be entitled to. The answer to this petition states, that the respondent was willing to allow the petitioner a reasonable proportion of property for a maintenance; that he was willing to allow her $2000; the property she had received from him to be valued and estimated by *John S. Magruder* and *John Hodges* of *Thos.* as a part of it; the balance of the $2000 to be taken by her in such of his property *as she might choose, at a valuation by said Magruder and Hodges,* and the balance in money, or notes made payable to said *M* and *H*, at such periods as they should determine to be reasonable, and *to be held and applied by them to her separate use.* At the foot of the answer an agreement was signed by the solicitor for the complainant, and by the defendant, that the court should pass a decree agreeably to the proposition in the answer, *and that said provision shall be in lieu of all claim of dower of the petitioner to any of her husband's property.* The court passed an order that the said *M* and *H* proceed to value the property in the proceedings mentioned, and in their report ascertain and disclose what property the complain-

1825.
JUNE.

Wallingsford
vs
Wallingsford

Courts of equity in this state have jurisdiction in cases of alimony. Alimony is a maintenance for the wife, where the husband refuses to give it, or by his improper conduct forces her to separate from him. It is not a portion of his real estate to be assigned to her in fee, and subjected to be sold by her, but terminates at her death, or at their ceasing to live apart.

Before a decree for alimony can be had, the court must know, either from the admissions of the parties, or from other evidence, that the husband refuses to maintain his wife, or has forced her to leave him: and also the value of his estate.

On a bill for alimony the court cannot decree a sale of any part of the husband's estate.

Whether or not articles of agreement *immediately between husband and wife,* for her *separate maintenance,* will be enforced? It is clear, however, that she can make no such agreement by *Attorney.*

On a petition by the wife for alimony, and the husband's appearing, and by his answer stating "that he was willing to allow her a private maintenance, to let her have $2000, the property she had before received from her to be valued and estimated by *J S M* and *J H,* as a part of it, and the balance of said $2000 to be taken by her in such of his

other property as she might choose at a valuation by said *J S M* and *J H,* and the balance in money, on notes payable to said *J S M* and *J H,* at such periods as they should determine to be reasonable, and to be held and applied by them to her separate use, accompanied with a written agreement, signed by the husband and by the wife's attorney, that the court should decree according to the proposition in the husband's answer. *Held.*—1. That no decree could pass to enforce such an agreement. 2. It could, that a decree could not be had for a sale of any part of the husband's estate. 3. That if either *J S M* or *J H* declined to make the valuation proposed by the answer, the court had no authority to substitute, without the husband's consent, any other person to make such valuation, and 4. That it was not a case proper for a decree for alimony.

1825.

Wallingsford
vs
Wallingsford

ant received previous to the valuation; what property she may obtain at the time of valuation, or at any subsequent period; the valuation and report to be subject to the further order of the court. The petitioner sometime after this order suggested the refusal of *Hodges* to act, and prayed that *Otho B. Beall* might be appointed, and the court, without the consent of the defendant, appointed *Beall. Magruder* and *Beall* made their report, in which they stated, that the petitioner had received of the respondent's property $430; that at the time they went to make the valuation the defendant was in the act of taking away from the petitioner the property so received by her, which they prevented. They were proceeding to value other property, such as she might choose, when the respondent refused to let her have such other property as she requested, but offered to give her sixty acres of land if she would give him a receipt in full for her claim, which she refused to do. Further, that it had been represented there were two notes in the hands of some person for the use of the petitioner, which the defendant declared he would not pay. Sometime afterwards the petitioner suggested to the court, that *Magruder* refused to proceed further to execute the order, and the court, on motion of the complainant, appointed the said *Beall* and *H. D. Chapin*, to proceed in the execution of the order. They reported that there was due to the petitioner, after making deductions, $1381 25, and that they valued the land of the respondent, chosen by the petitioner, at $12 per acre, and set off as her share 115 acres ten perches, which they described by metes and bounds. On this report the court passed another order, that the same would be ratified unless cause was shown to the contrary by the defendant; provided a copy of the order was served on him. At the time appointed for acting upon the return, the defendant filed a petition, in which he sets forth that he had been induced to give a written consent for a division of his property for the maintenance of his wife, and charges that his wife left his bed and board without any just cause or provocation, and *that he was perfectly willing that she should return and live with him if she chose to do so.* He prayed that all proceedings in the case might be quashed. A motion was then made by the defendant, that the complainant show cause why the proceedings should not be quashed; but the court

refused, and overruled the motion, and ordered that the same be stricken out of the minutes of proceedings in the cause, and they ratified the report. A petition was afterwards filed by the complainant, in which she referred to the former proceedings, and stated that she was desirous to effect a sale of the land which had fallen to her share, &c. and that not being competent to make a deed of the same, she prayed that the court would appoint some fit and suitable person or persons to effect said sale, and to give a title to the purchaser. On this petition the court ordered, that *H. D. Chapin* be appointed trustee to effect the sale. The defendant appealed to this court.

The cause was argued before MARTIN, ARCHER, and DORSEY, J.

*Magruder* and *Ashton*, for the Appellant, contended, that the petition was to be considered as a bill brought simply for *alimony*. The answer of the defendant admits none of the facts stated in the petition, but contains a proposition which is afterwards made a contract between the parties, and is the only foundation for the subsequent proceedings in the case. They insisted on a reversal of the decree, 1. Because it is not according to the contract, but in manifest violation of it. It is a decree *for the sale* of property, which by the contract was to be held and applied by them, *(M. and H.)* to the sole and separate use of the petitioner.

2. Because the property decreed to be sold was not set apart by the persons named by the parties to value it, and the agreement gave to the court no authority to substitute other persons.

3. Because the property which is to be applied to the sole and separate use of the petitioner, is to be in lieu of all claim of her dower to any of her husband's estate; whereas the decree of the court, which takes from the husband this property, does not deprive the wife of such claim in case she should survive him. If the court could not by its decree deprive her of dower, then it could not enforce the contract, and ought not to have decreed against the defendant.

4. Because, although a court of chancery may in some cases decree a separate maintenance to the wife, yet this cannot be done if the husband offers to receive the wife again; and in this case the defendant did make such offer.

5. Because the case furnished no ground for relief in chancery, and especially gave to the court no authority to direct a sale of the land.

On the *first, second* and *third points,* they cited 1 *Blk. Com.* 441. 3 *Blk. Com.* 94. *Ball vs. Montgomery,* 2 *Ves.* jr. 195. Act of assembly February 1777, *ch.* 12, *s.* 14. 1 *Madd. Chan.* 303; and *St. John vs. St. John,* 11 *Ves.* 533.

On the *fourth*—1 *Madd. Chan.* 307. *Legard vs. Johnson,* 3 *Ves.* 351, 361, and the cases referred to in *note (1)* in 358. *St. John vs. St. John,* 11 *Ves.* 532. *Wilks vs. Wilks,* 2 *Dick.* 791. *Head vs. Head,* 3 *Atk.* 295, 296, 547, 550. 1 *Ves.* 17, S. C. *Whorewood vs. Whorewood,* 1 *Chan. Ca.* 250. *Bullock vs. Menzies,* 4 *Ves.* 798; and *Purcell vs. Purcell,* 4 *Hen.* & *Munf.* 507.

On the *fifth*—*Duncan vs. Duncan,* Cooper's *Rep.* 254. *Ball vs. Montgomery,* 2 *Ves.* jr. 195. 1 *Blk. Com.* 441. 3 *Blk. Com.* 94. *Wilks vs. Wilks,* 1 *Dick.* 791. *Worrall vs. Jacob,* 3 *Mer.* 268. *Fletcher vs. Fletcher,* 2 *Cox's Rep.* 100; and *Durand vs. Durand, Ib.* 207.

*F. S. Key,* for the Appellee, referred to the act of February 1777, *ch.* 12, *s.* 14. 1 *Fonbl.* 105, (note n.) *Galwith vs. Galwith,* 4 *Harr.* & *McHen.* 477; and *Monell vs. Lawrence,* 12 *Johns. Rep.* 521.

MARTIN, J. delivered the opinion of the court. The proceedings in this case are erroneous, and must be reversed. It is an application for alimony, and there can be no doubt, the courts of equity in this state have jurisdiction in such cases, and will decree relief, where a proper foundation is laid for it. Their authority depends not merely on the constructive powers given to our courts of chancery, but is expressly delegated by the act of 1777, *ch.* 12.

Alimony is a maintenance afforded to the wife, where the husband refuses to give it, or where from his improper conduct compels her to separate from him. It is not a portion of his real estate, to be assigned to her in fee simple, subject to her control, or to be sold at her pleasure, but a provision for her support, to continue during their joint lives, or so long as they live separate. Upon the death of either, or upon their mutual consent to live together, it ceases, and the amount of this allowance must de-

pead upon the value of the husband's estate. Before a decree can be passed for alimony, the court should be in possession, either by the admission of the parties, or by testimony, of all the facts necessary to form a just decision. It must be proved that the separation was not by the voluntary act of the wife, but from the misconduct of the husband; and unless testimony is offered (in the absence of admissions by the party,) to show the value of his property, what data is given to ascertain the amount of her allowance? The decree in this case does not assign an income for the maintenance of the wife, but directs a sale of part of the real estate of the husband, and no disposition is made of the proceeds of such sale.

If then this decree is founded on the petition for alimony, independent of any agreement between the parties, it cannot be sustained. The record does not present any admission or evidence to ascertain the value of the husband's property. The decree does not direct an income to be paid for the maintenance of the wife. It does not create a personal liability in the husband to pay any sum of money, but orders in the first instance his land to be sold.

Let us see if this decree is entitled to more respect, if the agreement was the foundation for it?

By the agreement the husband was to give the wife, or to trustees for her use, property to the value of $2000. This property was to be selected by her, and was to be valued by two persons named in the agreement, *John S. Magruder* and *John Hodges*, of *Thos.* and in consideration of this property, the wife was to relinquish all her right of dower in her husband's estate. This agreement was signed by the husband, but not by the wife; *it was signed by an attorney.*

Whether an agreement for a separate maintenance will be enforced, where such agreement rests in articles between the husband and wife, appears not to be settled; those agreements are generally carried into effect by the intervention of a third party. In one case it was determined, such articles may be enforced at the suit of the *wife. Fitzer vs Fitzer, 2 Atk.* 511. But it is said, this decision was disapproved by subsequent chancellors; and *Legard vs Johnson,* 3 *Ves.* 361, *St. John vs St. John,* 11 *Ves.* 532, and *Wilks vs. Wilks,* 2 *Dick.* 791, are referred to as evidence of it. The *wife,* however, is not bound by a

1825.

Wallingsford
vs
Wallingsford

deed of separation, and a specific performance cannot be enforced as against her. *St. John vs St. John,* 11 *Ves.* 533. It is not necessary to decide this question in the case before us, nor do we mean to express an opinion upon it. For whatever effect might be produced by an agreement signed by the husband and wife, it is very clear, she could make no agreement *by her attorney.*

But suppose this to be a valid contract between the parties, has the court decreed a specific performance of it? The agreement was, that the property to be selected by the wife was to be valued by *Magruder* and *Hodges;* they are named in it for that purpose; that it should be valued *by them, was a condition* on which the husband agreed to give up his property, and formed an essential part of the contract. The court had no authority to substitute others in their place, in the manner stated in the proceedings. What is the case before us? The land was not valued by *Magruder* and *Hodges,* but by other persons, substituted by the court for them, without the consent, and perhaps without the knowledge of the husband, at least the appointment of one of them. The court have made a *new* contract for the parties, and have decreed a specific performance, not of an agreement made by them, but of one made by the court for them, without the assent of one of the contracting parties.

But again—If this was a binding contract on the parties, and the valuation had been made by *Magruder* and *Hodges,* how could the court decree a specific performance of it in the case then before them? That was a petition for alimony, and on that petition alimony alone could be decreed. If a special agreement was made between the parties, and accepted by the wife in lieu of her alimony; that agreement *per se,* superseded all proceedings in the case then depending; she had accepted another remedy; and if the husband did not perform his agreement, a new bill ought to have been filed against him, to enforce a a specific performance of it. Here the petition was filed for alimony on the 30th of April 1821. The court lose sight of the facts and prayer stated in the petition, and decree the specific performance of an agreement made on the 14th of September following, *more than four months after the case had been depending before them.*

The decree is reversed, without prejudice to the rights of the parties. DECREE REVERSED, &c.