JOHN M. EDMONDSON ET AL. *v.* ANNA BELLE SLICER.

*Presumption on Appeal—Sale of Land—Adjustment of Taxes and Interest.*

The decree of the chancellor, on issues as to a vendee's liability for taxes and interest on the purchase price, as between him and the vendors, must be assumed to have been justified by the evidence before the chancellor, in the absence from the record of the complete terms of sale and other evidence submitted to him as bearing on the question. **pp. 677-680**

In the absence of express agreement, the payment of interest is largely in the sound discretion of the chancellor.         p. 680

*Decided December 7th, 1927.*

Appeal from the Circuit Court for Baltimore County, In Equity (DUNCAN, J.).

Bill by John W. Edmondson and Alice M. Edmondson, his wife, against Anna Belle Slicer for specific performance. From a decree ratifying an auditor's account, plaintiffs appeal. Affirmed.

The cause was submitted on brief to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Gwynn Nelson,* for the appellants.

PARKE, J., delivered the opinion of the Court.

John W. Edmondson and Alice M. Edmondson, his wife, appellants, offered at public auction and sold to Anna B. Slicer, appellee, on October 20th, 1925, for $5,000, their improved parcel of land, containing about fifteen acres of land and lying in both of the adjoining counties of Carroll and Baltimore. The vendee claimed that she had merely bid the property in for the vendors and declined to complete the purchase; and proceedings were instituted specifically to enforce her contract. The bill of complaint stated that $475 of the purchase price was payable on the day of sale, and the residue within thirty days thereafter, and there is filed with the bill of complaint a copy of the certificate of purchase signed by the vendee, in which the terms of sale are stated to be in accordance with those contained in the published advertisement of the sale and "the general conditions governing real estate sales printed on reverse side." Neither this advertisement nor what was printed on the reverse side of the certificate of purchase is found in the record.

The vendee had not paid anything on account of the purchase price, and so, when the chancellor passed his decree on June 17th, 1926, for the specific performance of the contract, the vendee was required to bring into court, on or before August 20th, 1926, the full amount of the purchase money, with interest from the 12th (*sic*) day of October, 1925, and the vendors' costs as taxed by the clerk. The vendee let the day fixed for payment pass, and Gwynn Nelson, Esq., the trustee appointed by the decree to make the sale, advertised the property for public sale on September 20th, 1926, but on September 17th the vendee paid into court the sum of $5,376.05 in payment of the principal amount, with interest from October 12th, and the costs of suit and advertising. Notwithstanding this payment, the trustee proceeded with the sale, and reported the property as having been sold to John W. Edmondson, one of the vendors, for three thousand dollars, but nothing further was done under this report of sale.

At the time of making the deposit, the vendee alleged in a petition, addressed to the chancellor, that the vendors had continuously used and occupied the premises since the day of sale, and that she should receive rental therefor at the rate of fifty dollars a month, if she was to be required to pay the purchase money, with interest, and the taxes from the day of sale. On this petition the chancellor referred the proceedings to the auditor, and passed an order *nisi* allowing to the vendee rental from the day of sale, at the rate of fifty dollars a month. Within the period allowed by the order *nisi,* the vendors demurred to the petition, the demurrer was overruled, and the vendors then answered. In their answer the vendors alleged that the sum deposited in court was not sufficient; that the vendors had a right to occupy the premises until the purchasers had complied with the terms of sale; that the vendors of the property had acted, since the sale, as caretakers of the property, which was "improved by a dwelling, large grist mill and machinery"; that they had made no use of the mill or land; and that if the vendee had any claim for rent it would only be enforceable in an action at law.

Following this answer, there were orders, exceptions, and audits, until an opinion and decree of the chancellor was filed on March 3rd, 1927. The ultimate result of the successive proceedings was that the chancellor, expressly modifying the original decree to the extent of any inconsistency, directed that the vendee be charged with the expense and costs of the abortive sale and one-half of the usual commissions for a sale of three thousand dollars; and disallowed not only the rental value of the premises demanded by the vendee, but also the claim of the vendors for interest on the purchase money of five thousand dollars from October 12th, 1925, to September 17th, 1926, when it was paid into court; and for a refund of taxes paid by the vendors to the extent of the proportionate amount paid for the period from October 12th, 1925, to January 1st, 1926. Four days later the fourth audit was stated in accordance with this opinion and decree, and the vendors excepted to this account because it did not include the interest and the proportion of taxes paid as charges against the vendee.

On the same day that the exceptions to the fourth audit were filed by the vendors, they filed a petition to have the decree of March 3rd, 1927, vacated and annulled on the alleged ground that no testimony had been taken in the cause, and that the statement in the opinion and decree, which was one paper, that the conclusion of the chancellor was based upon the testimony, was incorrect. The petition further asserted that, if evidence were taken, the vendors could show facts which would be different from those stated in the opinion and decree, and that the object of the proceedings was to have the decree annulled so that the parties might offer evidence. As a result of this petition the parties later appeared before the chancellor, and could not agree upon what had taken place. The counsel for the vendee asserted that the facts were in evidence or had been agreed to in the hearing before the chancellor, and this assertion was denied by the counsel for the vendors. The chancellor made no admission that his order and decree was not based upon proof in the cause; and the vendors did not request him to certify, in any

manner, what had occurred in that connection. A record containing either the evidence, or the chancellor's certification of its absence, would have presented the question for review arising on the decrees, but the chancellor permitted the vendors to offer and then considered the evidence in support of their motion to vacate and annul the order of March 3rd, 1927. No attempt was made to establish the allegation that the chancellor had acted without any evidence on the issues of fact before him, and the only witness offered was John W. Edmondson, one of the vendors, whose testimony was directed to the issues before the chancellor when he made his finding on the facts and entered his decree. The testimony of the witness Edmondson tended to show that the purchaser was not to have possession of the property until the day of settlement; that the vendors had surrendered the premises on September 29th, which was twelve days after the vendee had deposited the purchase money in court; that they had made no use of the premises beyond that of occupying the house, but that the vendee had sent a man to grind at the mill in order to keep the trade, although it does not appear that this occurred before the vendee had paid for the property. The vendee submitted no testimony, and the chancellor, without an opinion, simultaneously filed two separate orders, refusing to vacate and annul the order of March 3rd and finally ratifying the fourth account of the auditor. The vendors then appealed, and the first question is the propriety of the refusal to charge the vendee with the proportionate amount of the taxes paid by the vendors for the period from the date of the purchase to the first day of the ensuing year. The sum involved is ten dollars and eighty-six cents. The vendors paid the taxes for the current year, which had been levied before the day of sale and so were a lien on the property, but although payable, were not in arrears so as to be enforceable until the first day of January of the succeeding year. *Findlay v. Darnall,* 143 Md. 290, 294-300; Code, art. 81, secs. 34, 56, 54. The vendee, however, did not obtain either the possession or enjoyment of the premises until in September, 1926. It is true that prac-

tically all of the delay in the delivery of possession was attributable to the refusal of the vendee to comply with the contract of sale, but the vendors remained in the occupancy of the premises from the day of sale until September 29th of the following year, and were not required to account for any rental value or for such use as they enjoyed. In the absence of sufficient proof in the record to show what were the complete terms of sale, this court cannot decide the chancellor was in error. The appellate court will not act unless it has for review all of the relevant record upon which the court of chancery proceeded to its decree on the point in controversy.

The second ground of exception is that the vendee was not charged with interest on the purchase money from the day of sale to the payment of the price into court. Again the record supplies this court with neither definite nor complete information on this matter. Whatever support the appellants might have implied from the fact the original decree for specific performance required the vendee to pay interest on the purchase money from the day of sale to its payment is denied by the subsequent modification of the decree eliminating, after hearing, the payment of all interest by the vendee. The evidence which the chancellor found sufficient to induce the striking out of the charge of interest is not found in the record. The only witness whose testimony is in the record is Edmondson, one of the vendors, whose post-decree evidence is to the effect that the vendee was not to have possession until the day she settled for the property, and that the vendors retained their occupancy until more than ten days after the money was paid into court. The chancellor did not consider the evidence of Edmondson sufficient to overcome the weight of the vendee's proof of countervailing equities. The failure to set out the complete terms of sale or otherwise to show that the vendee had agreed to pay interest from the day of sale, and the omission of any pertinent admissions or testimony which may have been made or taken before the decree of March 3rd, leave this tribunal without any basis to reject the determination of the

chancellor as to interest.   It is manifest that, before an appellate court may declare a finding and decree to be erroneous in any particular, all the record before the court of chancery with respect to the question there determined must be submitted for review on appeal.

In the absence of express agreement, the payment of interest is largely in the sound discretion of the chancellor, and, where a record is as defective as the present one, and contains nothing to the contrary, it must be assumed that the proper and necessary proof was before the chancellor as the basis for his action, and that his ruling was correct. *Brewer v. Sowers,* 118 Md. 681, 690, 691; *Jaeger v. Shea,* 130 Md. 1, 4, 6, 7; *Hagerstown Trust Co., Executor of Mealey,* 119 Md. 224, 230; *Wilson, In Re Estate of Martin,* 135 Md. 195, 198; *Conaway v. State,* 140 Md. 547, 549, 550.

*Decree affirmed, with costs to the appellee.*